PANDELLY *vs.* HIS CREDITORS.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

In cases of opposition to the appointment of syndics, the question is not whether the proceedings before the notary shall be homologated, (which do not require a judgment of homologation,) but whether the opposition shall be sustained, on the ground that the syndics were not elected by a majority of legal votes.

The proceedings of creditors before a notary, in appointing syndics, are not vitiated because some illegal votes are given. They are to be struck out from the proceedings.

The creditor may prove his claim, and vote for syndics by proxy, or an agent, who can swear to the fact of the debt being due and owing, of his own knowledge.

Any evidence which satisfies the notary of the authority of an agent to vote for syndics, is *primâ facie* good, and when no objection is made, he cannot refuse the vote; but the notary is not to decide on the reality of the debts, and if he did, it would not conclude the other creditors.

Creditors, not making opposition to votes for syndics before the notary, may do so within ten days after the proceedings are returned into court; but then the burden of proof is on the opposing creditor, to show the illegal votes.

The principle, that claims of creditors on which they vote may be investigated previously to the homologation of the appointment of syndics, is confined to cases of forced surrender, according to the Spanish law. The statute of 1817, relating to voluntary surrenders, requires only *ex parte* evidence of the debts, previous to voting for syndics.

The *majority in amount,* required to elect a syndic, when there are more than two candidates, is not an absolute majority of all the votes given, but only a plurality or the highest number.

It is only on an opposition to the tableau of distribution, that the validity and relative rank of debts is to be finally and contradictorily tried between all the creditors.

EASTERN DIST.
*April*, 1836.

PANDELLY
*vs.*
HIS CREDITORS.

This case comes before the court on the opposition of several creditors united, to the proceedings of the creditors before the notary, by which John D. Bein and Joseph Le Carpentier were appointed syndics of the creditors of the insolvent debtor.

The insolvent presented his petition and bilan to the district judge, and prayed leave to make a surrender of his property, for the benefit of his creditors, and obtain the benefit of the insolvent laws.

The cession of his property was accepted, and a meeting of the creditors took place before a notary, who presented their respective claims, and voted for syndics. These proceedings were returned by the notary into court, on the 6th June, 1835, and on the 16th of the same month, Tricou and several other creditors united, presented an opposition to the appointment of the syndics, as being illegal, on the following grounds :

1. Two votes are recorded by the firm of Reynolds, Byrne & Co., one given by C. Briggs, acting for the firm, on a claim of twenty-four thousand six hundred dollars, for John D. Bein, as sole syndic ; the second by James Peuch, acting under a power of attorney, on twenty-five thousand dollars, for J. D. Bein and J. Le Carpentier, as joint syndics. These votes are alleged to be illegal, because the creditors have not certified upon oath, that their claim was true and legitimate, and because no creditor can take the oath and vote by proxy for syndics, &c.

2. The same objections are made to a large sum voted on by different creditors, in the same way, all being given for Bein and Le Carpentier. They pray that these votes be all declared illegal, and that Claude Samory, who had also a large vote, be declared the sole syndic.

The votes, as returned by the notary, stood one hundred and seventy-two thousand five hundred and eighty-five dollars for Bein and Le Carpentier, ninety-six thousand seven hundred and eighty-one dollars for Claude Samory, forty-seven thousand three hundred and fourteen dollars for John D. Bein alone, fourteen thousand three hundred and

twenty-three dollars for J. Le Carpentier alone, and two thousand one hundred and twenty-six dollars for Le Carpentier and Samory. The notary returned Bein and Le Carpentier as elected joint syndics.

The district judge, in deciding on this opposition, determined that the proceedings were illegal, and that another meeting of creditors take place on a day to be fixed, unless an appeal was taken within ten days, and that the notary receive no votes of creditors, under powers of attorney, unless such power is accompanied by notarial acts, nor unless the oath be made of the debt by the creditor, except in cases where the creditor is absent, or under such circumstances that he cannot take the oath ; and in such cases, the attorney or some competent person must make oath of personal knowledge of the existing indebtedness.

From this judgment, the opposing creditors and the syndics appealed.

*Morphy*, for the syndics.

1. The opposition now made to the right of creditors, to present their claims and have them sworn to, by an agent or attorney in fact, and vote by proxy, should have been made before the notary, to enable the creditor whose claim and right was contested, to apply a remedy, either by appearing in person or perfecting the authority under which the agent acted. *Seghers* vs. *His Creditors*, 10 *Martin*, 544.

2. The provision of the Louisiana Code, article 3055, which authorises the creditors to appear successively before the notary, and which, it is contended, prevents opposition from being made before the notary, only applies to cases of a forced *respite*, which requires three-fourths of the creditors in number and amount to grant it.

3. The oath required by a creditor, in presenting his claim before the notary, need not be made in person. It may be done by an agent or attorney in fact. It is only received as *primâ facie* evidence of the claim, at the time of voting ; and the vote of the creditor for syndics can be given by proxy.

4. The opponents assert that Samory was elected by a majority of legal votes, and that he should have been declared the syndic. This they have not shown; they are bound as much to show, that his votes were founded on real debts and legally given, as we are on behalf of the syndics, who were declared to be legally elected.

5. A debt, evidenced by the note of the insolvent, is sufficient proof before the notary, to recognize the claim and allow the holder to vote thereon.

6. A creditor who swears to his debt, due on a contract for building, which the insolvent failed to execute, should be allowed to vote, although his claim may be afterwards disputed.

7. The strict proof, which the opponents in this case contend must be made, of all claims presented against the insolvent's estate, is only required to be made on the trial of the opposition that is made to it, contradictorily with all the creditors. In this case they are all plaintiffs and defendants, and then every claim that is contested, must be legally proved and substantiated. But the votes in this case for syndics were properly given, on preliminary and *primâ facie* proofs and evidence, and Messrs. Bein and Le Carpentier were duly appointed syndics.

*D. Seghers,* for the opposing creditors.

1. The counsel for the syndics makes a mistake in applying the doctrines of 10 Martin, 54, to his case. The doctrine there laid down, only relates to opponents who have not made their objections at the meeting of creditors before the notary, to the votes given by proxy; but that case does not extend to the mode in which debts are to be proven.

2. The doctrine of opposing illegal votes, at the meeting before the notary, seems at variance with the 18th section of the act of 1817, concerning voluntary surrenders. It expressly provides, that this opposition shall be made before the court, by a written *deposition.* 2 *Moreau's Digest,* 429.

3. This court has declared in a subsequent part of the same volume, (10 Martin, 697,) in the same case, that it is

the duty of the notary to record and send up the evidence, on which he receives the claims of the creditors, so that it can be acted upon by the court.

4. It is in vain the counsel for the syndics contends, that the provision in the Louisiana Code, article 3055 applies only to forced respites, when the creditors are only to meet successively, and put in their claims and votes without deliberating together; when by the 8th section of the insolvent act of 1817, the creditors are to be called in the manner, and within the time prescribed for respites, and the Louisiana Code, article 3056, says, "when the creditors refuse a respite, a cession of property ensues, and that the proceedings continue," as in case of a surrender.

5. The learned counsel admits, the oath of the creditor before the notary, either by himself or by proxy, is only *primâ facie* evidence of the debt, and which admits the notary is incompetent to pass on contested claims. The law makes the votes of a majority of *claims* sufficient to elect the syndics; consequently, as the creditors *all* have a vital interest, that the property shall not go into unfaithful hands, they have a right to scrutinize these votes before the court, and see that they are all legal.

6. The insolvent act of 1817, section 14, provides that " at the meeting of creditors, the latter, after having certified upon oath their respective claims to be true, &c., shall proceed to the appointment of one or more syndics, &c." This involves two requisites: 1st. The oath to be taken by the creditor personally ; and 2d. That it must be taken at the meeting, and before voting for syndics. It is as imperative that the creditor take the oath before voting, as it is, that the opposing creditor shall make his written deposition before the court, setting forth the nullity of the election of syndics, within ten days after such appointment.

7. The creditors cannot vote for syndics by proxy. The 3d section of the act of 1817, requires that the insolvent shall include in his schedule, the names of all his creditors, &c., and the 14th section says, these creditors are to come forward and certify on oath their respective claims, *before*

they proceed to vote for syndics. The reason of this is, that fraud is presumed in cases of insolvency. 8 *Louisiana Reports,* 319.

8. The votes, or many of them, by which Bein and Le Carpentier were elected, being shown to be illegal, Claude Samory should be declared elected sole syndic.

*Sterrett,* for the syndics, in conclusion.

1. The law contemplates, that the creditors should appoint some one or more persons, in whom they have full confidence, to be syndics, and take charge of the debtor's property. This they have done in the present case, as evinced by their votes, and Bein and Le Carpentier are clearly chosen, by a large majority.

2. The court below was, therefore, clearly wrong, in referring this matter to another meeting of creditors. It can only cause delay, for Bein and Le Carpentier would receive the same, or a greater number of votes, and in the meantime the property is wasting. The interest of all is to acquiesce in the result of the first meeting, which is believed to be legal, and as far as the opponents are concerned, they make, at best, but an improbable case.

3. It will be seen, by reference to the record, page 48, that Tricou and others of the opposing creditors withdrew their opposition to Bein and Le Carpentier as syndics. These creditors represent, in their own right, (and one of them as agent,) claims, on which they *voted at the meeting,* to the amount of eighty-three thousand five hundred dollars. These votes were given to Samory alone; and deduct this from the remainder given for him at the meeting, and but thirteen thousand two hundred and eighty-one dollars remain. The proceedings should remain as they were returned from the notary.

*Bullard, J.,* delivered the opinion of the court.

This is an opposition to the appointment of syndics, on the ground that the nomination was not legally made before the notary. The 18th section of the act of 1817, relative to

voluntary surrenders, authorises such opposition within ten days after the appointment of syndics. Before we proceed to examine the particular objections to the proceedings had before the notary in this case, we will remark that the preceding section of that act requires that a copy of the *procès verbal* of the deliberations of the creditors, should be filed in court, and it shall no longer be necessary to proceed to the homologation of such deliberations. The appointment of syndics does not require the sanction of the court, and in case of opposition, the question is not whether the proceedings shall be homologated, but whether the opposition shall be sustained; or, in other words, the opposing creditors must show that the persons returned by the notary, as syndics, were not elected by a majority of legal votes.

It appears by the notary's return that creditors representing an amount of one hundred and seventy-two thousand five hundred and eighty-five dollars, voted for Bein and Le Carpentier. The next highest candidate is C. Samory, who received votes to the amount of ninety-six thousand seven hundred and eighty-one dollars. The opposition cannot be sustained, unless the opposing creditors show that the syndics returned, received so many illegal votes as if rejected, would leave them with a minority. It cannot be pretended that the whole proceedings are to be annulled, because some illegal votes were received. Such votes may be rejected, but if the syndics returned as elected have still a majority, independently of them, the opposition grounded on the illegality of the election, must fall. The opposing creditors must, therefore, show that Bein and Le Carpentier received illegal votes, representing more than seventy-five thousand eight hundred dollars of debts, the difference between the vote of Samory and theirs.

The opposition in this case rests mainly on the principle contended for by the counsel, that no oath by proxy, can legally qualify a creditor to vote for syndic, and that the pretended powers of attorney, produced by such proxies, are insufficient.

EASTERN DIST.
*April*, 1836.

PANDELLY
*vs.*
HIS CREDITORS.

In cases of opposition to the appointment of syndics, the question is not whether the proceedings before the notary shall be homologated, (which do not require a judgment of homologation,) but whether the opposition shall be sustained, on the ground that the syndics were not elected by a majority of legal votes.

The proceedings of creditors before a notary, in appointing syndics, are not vitiated because some illegal votes are given. They are to be struck out from the proceedings.

50

EASTERN DIST.
April, 1836.

PANDELLY
vs.
HIS CREDITORS.

The creditor may prove his claim, and vote for syndics by proxy, or an agent, who can swear to the fact of the debt being due and owing, of his own knowledge.

That the debt may be proved by the oath of an agent or proxy, in these preliminary proceedings, has often been recognized by this court, whenever the proxy swears to the fact, as of his own knowledge. There may be cases in which the principal is personally ignorant of the existence of the debt, as when sales are made by factors for and in the name of principals living abroad. We cannot admit the principle contended for by the opposing creditor, that the power of attorney should contain or express authority to swear for his constituent. In the case referred to by him in the Louisiana Reports, 425, Foucher vs. His Creditors, we held that an agent could not make the oath required from an insolvent debtor as preliminary to his surrender, and to obtain a stay of proceedings against his person and property. It is manifestly impossible for an agent to swear that the insolvent has withheld no part of his property from his creditors. That is a matter which the insolvent alone can know. There is a great difference between swearing for and in the name of another, and swearing in support of anothers rights upon facts within the personal knowledge of the affiant.

But it is contended, on the part of the syndics, that no objection was made before the notary to that mode of proof, and that this court held that the case of Seghers vs. His Creditors, 10 Martin's Report, 54, that they would not listen to objections which the opponents had an opportunity to make before the votes were received, and failed to make.

To this the counsel for the opposing creditors answers: 1st. That in the case alluded to there had already been a meeting of the creditors, and the proceedings had been homologated without opposition; and 2nd. the creditors since the promulgation of the Code of Louisiana, are no longer required to meet all at the same time, but may appear successively before the notary, and that they have no opportunity to make objections.

It does not appear to us that the first answer is satisfactory, or that the cases can be well distinguished. By the homologation spoken of in that case, could only be meant that no

EASTERN DIST.
*April,* 1836.

PANDELLY
*vs.*
HIS CREDITORS.

opposition had been made, because the statute as we have seen does not require that the proceedings should be expressly sanctioned by the court. If no objection is made before the notary, the only inquiry on an opposition is, whether the notary erred in permitting persons assuming to be creditors to vote. He has before him the bilan containing a sworn list of the creditors, and he is bound to require that the debts should be sworn to before any person is permitted to vote. Any evidence which satisfies him of the authority of an agent, is *primâ facie* good, and when no objection is made we do not well see how he could take upon himself to refuse a vote. He is not to decide on the reality of the debts, and if he did, it would not conclude the creditors.

But it is said further that no opportunity is offered to make objections, as the creditors are now permitted to appear successively and vote. The statute contemplates a meeting and nothing prevents the creditors from all coming together, or any one of them who may have an interest in so doing, from remaining and making objections as they come forward to vote. If they chose not to make any objections at the time, and afterwards make opposition, they must show that persons voted who had in fact no right to do so, and the burden of proof is on the opposing creditor. If we deviate from the rule settled in the case alluded to, we transfer the contest relative to the syndicship from the notary's to the court room. The case of Planters' Bank *vs.* Lanusse, also referred to in 10 Martin, 690, is entirely different from this. That was a case of forced surrender, which the court decided was not governed by the act of 1817. The principle recognized in that case, that the claims of creditors on which they vote, may be investigated previously to the homologation of the appointment, is confined to cases of forced surrenders according to the Spanish law; but even in that case it is coupled with the condition that the notary must record the proofs each party presents, and return it to the court. The statute of 1817, required only *ex parte* evidence of the debts, previous to voting for syndic.

*Margin notes:*

Any evidence which satisfies the notary of the authority of an agent to vote for syndics, is *primâ facie* good, and when no objection is made, he cannot refuse the vote; but the notary is not to decide on the reality of the debts, and if he did, it would not conclude the other creditors.

Creditors, not making opposition to votes for syndics before the notary, may do so within ten days after the proceedings are returned into court; but then the burden of proof is on the opposing creditor, to show the illegal votes.

The principle, that claims of creditors on which they vote may be investigated previously to the homologation of the appointment of syndics, is confined to cases of forced surrender, according to the Spanish law. The statute of 1817, relating to voluntary surrenders, requires only *ex parte* evidence of the debts, previous to voting for syndics.

EASTERN DIST.
*April,* 1836.

PANDELLY
*vs.*
HIS CREDITORS.

The *majority in amount,* required to elect a syndic, when there are more than two candidates, is not an absolute majority of all the votes given, but only a plurality or the highest number.

It is only on an opposition to the *tableau* of distribution, that the validity and relative rank of debts is to be finally and contradictorily tried between all the creditors.

By the majority in amount required for the election of syndic, we understand, not an absolute majority of all the votes given, but when there are more than two candidates a majority in the popular sense of the word, that is the highest number or plurality of votes; such is understood to have been the Spanish law, and recognized by this court, in 4 *Martin's Report,* 307.

The opposition in this case, is to the legality of the proceedings, so far as the election of Bein and Le Carpentier as syndics, is concerned. It is not, therefore, important to inquire into the legality of votes given to other candidates.

It is in our opinion only on opposition to a tableau of distribution, that the validity and relative rank of the debts is to be tried finally and contradictorily between all the creditors, and the law does not contemplate such a scrutiny as preliminary to the nomination of syndics. Suppose creditors did not attend the meeting of creditors, it could not be pretended that they would on the final question upon the tableau, be precluded from contesting the claims of those creditors who had attended and voted, and whose votes had been afterwards declared legal upon an opposition like the present.

According to this view of the case, and of the law which is to govern cases of this kind, even admitting that the objection is well taken to the right of Millaudon to vote on his claim, for unliquidated damages arising *ex contractu,* and that the vote of Reynolds, Byrne & Co., ought to be rejected as double and inconsistent, still Bein and Le Carpentier would remain with more votes than any other candidates; and in our opinion, the opposing creditors have not made good their opposition.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled and reversed; the opposition overruled and dismissed, and that the costs of the opposition in the court below be paid by the opposing creditors, and those of the appeal to be paid by the estate.