No. 9298.

## FANNY K. PHILLIPS VS. HER CREDITORS.

In respite proceedings, creditors domiciliated out of the State, though not summoned, have the right to appear and vote in the meeting of creditors.

Creditors are not bound to appear at the meeting in person, but may do so through properly appointed proxies or attorneys in fact.

The oath to their debts, of creditors who appear by proxy, may be made either by the creditors themselves before any proper officer, or by their proxies before the notary holding the meeting, provided the proxies swear of their own knowledge and not merely of belief or of derivative information.

Creditors who have voted at the meeting have no right to withdraw or change their votes, without legal cause assigned, after the *procés verbal* of the meeting has been returned into court and during the pendency of proceedings for its homologation.

Under the terms of the Code, the filing of a proper schedule of assets is a condition precedent to the binding effect of the respite upon creditors.

When such schedule has not been filed, the defect may be urged as ground of opposition to the granting of the respite. When the respite has not been refused by the creditors, but has been refused by the court on the ground of defect in the proceedings, the cession of property does not follow under the terms of the Code, but the relief sought by the applicant is simply denied and the case terminates.

APPEAL from the Twenty-fifth District Court, Parish of Lafayette. *Clegg*, J.

*C. S. Rice* and *M. E. Girard* for Plaintiff and Appellant.

*Geo. H. Wells* and *C. A. Mouton* for Defendants and Appellees.

The opinion of the Court was delivered by

FENNER, J. This is an application for a forced respite. It appears from the *procés verbal* of the notary public that at the meeting of creditors, the votes of thirteen creditors whose claims aggregated in amount the sum of $3351 42, were recorded in favor of the respite; and the votes of three creditors, whose claims amounted to $3071 30, are recorded against the respite.

Within ten days after the return of the *procés verbal* into court, several oppositions were filed to its homologation.

The case bristles with controverted questions arising under the law of respite, on which subject our jurisprudence is singularly barren of decisions.

1. Several of the creditors voting on either side were domiciliated out of the State, and it is contended that such persons had no right to participate in the proceedings.

We cannot approve of this proposition. Such creditors are not to be summoned according to the law; but their interest in the proceed-

ings is recognized by the provision requiring the appointment of an attorney to represent them and prescribing his duties to establish the debts of the absentees and to see that the proceedings are conducted legally. If they choose to appear and act in their own behalf at the meeting, we see no reason why any discrimination should be made between the rights accorded to them and those of resident creditors.

2. All of the creditors save one appeared and acted at the meeting through proxies; and the point is made that, under paragraph 5 of Art. 3087 C. C. no creditors can vote who do not appear in person and "make oath before the notary holding the meeting," to their debts. We hold that this carries strictness of verbal construction beyond reasonable limits; and that, under the application of the maxim, *qui facit per alium facit per se*, the creditor who acts through a properly constituted agent complies with the requirement and reasonable intendment of the law. It would be an intolerable oppression to require creditors living in parts of the State remote from the place of meeting, to journey thither in person, under penalty, in case of failure, of losing their right to vote and being bound by a forced respite granted by attending creditors, however few in number.

3. In some instances the oath to the debt had been made by the absent creditor in due form before a competent officer of his domicile, and this affidavit was filed at the meeting by the agent, together with his power of attorney. We think this was a substantial compliance with the law, and its sufficiency results as a necessary corollary to the preceding proposition just discussed. The object of the law was to secure proof of the debt by proper affidavit, and the provision that it must be made before the notary holding the meeting could only apply to the contingency in which the creditor appeared at the meeting.

4. In other instances, the attorney himself made oath to the debt. In matters of insolvency, where creditors are allowed to act in meetings through proxies, the jurisprudence is clear that the proxy may make the required oath to the debt, provided he swear *of his own knowledge*, and not merely of his belief or of merely derivative knowledge or information. Planters' Bank vs. Lanusse, 10 Mart. 690; Pandely vs. Creditors, 9 La. 387; Reed vs. Powell, 11 Rob. 98.

The same rule applies here.

5. It is claimed that Michael Levy, the proxy who made oath to debts of several creditors represented by him, had no knowledge whatever of the debts except such as was merely derivative. This charge may be true, but it is sustained by no evidence whatever. The oath

of the proxy is direct, positive and unqualified. The only evidence touching his relation to the parties is that showing that he had been in the employment of the petitioning debtor. This fact, far from establishing that he could have no personal knowledge of the debts, tends rather in the contrary direction.

6. It is claimed that Michael Levy, who acted as proxy for several of the creditors, had really no authority to vote for them. There is no dispute that the power of attorney filed by him was signed by the creditors whose names are attached thereto, and that said power did confer upon him an authority to vote for them in the respite proceedings in certain contingencies. If we were guided exclusively by our construction of the instrument, we should doubt whether the contingency upon which his authority to vote arose had occurred. But we have strictly examined the oppositions filed without finding, among the grounds thereof, any assignment of his want of authority except as to one of the creditors, Hornthall, Whitehead, Weissman & Co., and that averment is supported by no evidence whatever. Besides, the above named creditor, with others, have appeared in the proceedings for homologation, and, without challenging the authority of Levy to vote, have applied to the court for permission to withdraw or change their votes. We quote the exact language used by that creditor. "Your appearer represents that at the meeting of creditors held in above suit on February 1st, 1883, *their vote* was recorded for the respite. Your appearer further alleges that they now desire to be permitted to withdraw *their vote given for the respite*," etc.

Language of similar purport was used in the applications of other creditors represented by Levy. There is no denial, but on the contrary an admission, that the vote cast by Levy for them was "their vote." They do not deny that they voted at the meeting through him—they only ask to withdraw or change their vote. This is an acknowledgment of his authority and a ratification of his action, which removes that question from controversy.

7. As above indicated, several of the creditors, who had voted for the respite through Levy, applied to the court for permission to withdraw or change their vote. This application was made long after the meeting had been closed, after the *procès verbal* thereof had been filed in court, after all the oppositions thereto had been filed, and, indeed, during the pendency of the trial. The court allowed the application and, the result of the vote being thereby changed, it rendered judgment refusing the respite.

In this course the judge was guided by a *dictum* of this Court in the case of Anderson vs. His Creditors, 33 Ann. 1158. The passage relied on is in these words : " In making the computation, we leave out of view the question whether the Citizens' bank, which had at first voted against and which subsequently intervened praying to be permitted to vote for the respite, can be allowed to do so. It is clear that, if the bank could not change its vote, it could withdraw it before homologation. *Even if it could not,* the vote against the respite would be that of nine creditors representing $17,106 *against,* and ten creditors representing $30,670 for the respite."

It does not very clearly appear from the opinion whether the bank's application might not have been made before the closing of the meeting and the return of the *procès-verbal.* But in any event the above extract shows how purely *obiter* was the *dictum.* It has no force as a precedent.

It is true that the Code speaks of even the forced respite as a contract, saying in article 3091 : " in order that the *contract of respite* may be effectual it must be homologated by the judge who ordered the meeting of creditors."

It is argued that, as it is a contract and as it does not become finally concluded before the homologation, therefore the parties remain at liberty to withdraw from it at any time before it is finally concluded. Notwithstanding the expression of the Code, it is obvious that the forced respite is not, properly speaking, a contract, because a contract is only binding on those who consent to it; while the forced respite is binding equally on those who expressly refuse to consent. No mere contract could have such an effect. The forced respite results, not from contract, but from the operation of law, and is the effect given by the law to the decree of a competent court, rendered in a judicial proceeding conducted according to the requirements prescribed by law.

One of the prerequisites to such a decree prescribed by law is that the judge shall order a meeting of creditors to be held before a proper officer, that due notices of said meeting shall be given, and that such creditors as desire to do so may appear at that meeting and, on complying with prescribed requirements, may vote for or against the respite.

As the term " vote " indicates, it is a kind of election, the time and place of holding which are fixed by law to be at the meeting of creditors. When that meeting terminates, the polls are closed. The *procès-verbal* returned into court is the equivalent of a return of the election. Its results cannot be altered by subsequent changes in the minds of the

voters, nor can they be invalidated except upon proof of defects in the proceedings or of error, fraud or violence affecting the votes.

There is no more warrant for allowing parties who have voted to change or withdraw their votes, of their mere volition and without legal cause assigned, than there would be to permit those who had omitted to vote to come into court after the meeting and record their votes. If such changes might be allowed, what would be the result? Parties interested might well say that the judgment of the court is not based upon the vote of the creditors at the meeting as provided in the law, but upon their action after the meeting. They might justly claim that, at least, a new meeting should be ordered; for they might say that they rested content with the result of the vote as recorded, and that, had it not shown a majority for the respite, there were other creditors whose attendance might have been secured, that would have voted for it.

But after the new meeting had been held, subsequent changes might annul its results; and thus the proceeding would rest in perpetual indecision subject to vacillations in the minds of creditors.

It seems clear to us that the only test of the question whether the respite has been granted or refused by a majority of the creditors, is the result of the vote cast at the meeting as shown by the *procès-verbal* returned into court, and that such result cannot be altered by any subsequent action of the creditors unless based on grounds legally invalidating the votes or the proceedings.

Therefore, the judge erred in allowing creditors either to withdraw or change their votes, without legal cause assigned.

It was necessary to decide the foregoing questions in order to determine whether or not the respite was granted or refused by the creditors, because although, on the remaining point, we refuse the respite, it is on grounds which lead to different results from those which would have followed, had the creditors refused the respite.

8. The last ground of opposition to be considered is that the schedule filed by the petitioning debtor did not contain "a true and exact schedule of all his movable and immovable property, as well as his debts." C. C. 3087.

The only statement of assets contained in the schedule filed, is in the following words:

"Merchandize, as per ledger and open accounts, horses, etc., $10,120."

How much merchandize and of what kind, how many open accounts and against what debtors, how many horses, whether two or a hundred,

the schedule fails to indicate even by a hint. It would be a waste of words to emphasize the utter insufficiency of such a schedule, as a compliance with either the letter or spirit of the law. It is so grossly inadequate as not to admit of discussion.

Let it be well understood that we should not be hypercritical in criticizing the sufficiency of a schedule attacked at so late a stage of the proceedings, and would be disposed to sustain one which even approximated the requirements of the law; but it is impossible to pass over such defects as this schedule presents, because it is the entire equivalent of no schedule at all, or of one simply stating, "property, $10,120."

Now, the Code provides that the respite granted by a majority of the creditors, when approved by the judge, "shall be binding on the other creditors who did not agree to it;" but it adds: "but in order that it may produce that effect, it is necessary ' that the debtor should deposit in the office of the clerk of the court to whom he presents his petition for calling his creditors, a true and exact schedule, sworn to by him, of all his movable and immovable property, as well as his debts.' If this schedule has not been filed, it seems, from the terms of the law, that the respite, even if granted, would not be binding on creditors who did not agree to it; at least if they had not taken part in the proceedings. It is settled by this Court that such objection may be urged on opposition to the homologation of the proceedings of the meeting, even by a creditor who did not appear at the meeting." Burdon vs. His Creditors, 20 Ann. 364.

If is urged here, both by creditors who appeared and by some who did not appear at the meeting. It would be unjust to grant a respite which would be binding on some and not on other creditors, restraining the former from acting while leaving the latter free to subject the property of their debtor to the payment of their claims.

For these reasons, we think that the judgment refusing the respite should be affirmed.

But the question remains whether the remaining portion of the judgment enforcing the cession of property and appointing a provisional syndic should he sustained.

The Code, art. 3098, provides: " When *the creditors* refuse a respite, the cession of property ensues and the proceedings continue as if the cession had been offered in the first instance."

This is the only warrant for continuing the proceedings, as in case of cession. The law grants to a majority of creditors the option of either granting the cession, or of refusing it and thereby gaining the advan-

tage of a cession of property. They have not availed themselves of the last alternative. They have not refused the respite and, therefore, under the express terms of the law, the condition upon which the cession ensues has not arisen. The respite is denied by the court, not by reason of the refusal of the creditors to grant it, but by reason of defect in the proceeding having the effect to invalidate it. By ordering the matter to proceed as in case of cession, we should act without warrant of law; and, moreover, the defective schedule would be as grave an obstacle to the validity of the proceeding as a voluntary surrender or cession as it is to the respite proceeding. Burdon vs. Creditors, 20 Ann., 364.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from, in so far as it refuses the respite, be affirmed, and that in other respects it be annulled, avoided and reversed; plaintiff and appellant to pay costs of lower court and appellees to pay costs of this appeal.

. The Chief Justice took no part in this case.