No. 13,060.

## KOCKE, HERNANDEZ & DePASS VS. THEIR CREDITORS.

### SYLLABUS.

, The election of a syndic at a meeting of the creditors of an insolvent and the discharge of the insolvent, will be sustained, when the same are sought to be set aside on objections urged for the first time in an opposition to the *proces verbal* of the Notary filed in the District Court, when the grounds urged are that the notary received votes without proper evidence, and it is shown on the trial of the opposition that the votes so received were legal and cast in conformity to the wishes of the owners of the claims. (Pandely vs. Creditors, 9th La., 387; Gwartney vs. Creditors, 13th Ann., 189; Conant vs. Millaudon, 5th Ann., 542; 26 N. E. Rep., 667.)

ON APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*Frank Zengel* for Insolvents, Appellees.

*Frank Chretien* for Dodt & Freie, Opponents, Appellants.

Submitted on briefs April 20, 1899.
Opinion handed down May 1, 1899.

The opinion of the court was delivered by

NICHOLLS, C. J. Kocke, Hernandez & DePass made a voluntary surrender of their property. It was accepted by the court, and a meeting of creditors called before Zengel, notary public. The meeting was held before the notary, who returned a *proces verbal* declaring that a majority in number and amount of creditors had voted in favor of accepting the cession; of having Henry Kocke, one of the insolvents, appointed as syndic, and of discharging the insolvents. After the *proces verbal* had been filed in the District Court, Dodt and Freie, creditors, filed an opposition to the homologation of the proceedings.

On the trial thereof it was dismissed, and the opponents appealed. The opposition on the trial was narrowed down to a contest over the votes cast with the majority in the meeting of creditors in the names of Charles Mansion and P. E. G. Plasworth, whose names appeared on the schedule as creditors of the insolvents.

The opposition to the vote in Mansion's name was upon the ground that he was dead when the power of attorney and the affidavit in his name, which appeared in the record, were made; that no legal representative had been appointed for his succession.

That proof of said claim should therefore be rejected by the court.

The opposition to the vote in the name of Plasworth was that he was not the real owner of the claim at the time of the meeting of creditors, as it had been compromised by him and he had been paid.

The vote, both upon the Mansion and the Plasworth claims, was cast by Henry Kocke, he declaring himself to be agent and attorney in fact of each of said parties, and that they were creditors for the amounts for which they had been respectively recognized on the list of creditors.

In support of his right to so appear and vote Kocke presented, first, a power of attorney to him, signed "C. Mansion, per H. Mansion," to which was annexed an affidavit of H. Mansion to the fact of the indebtedness of the insolvents to Charles Mansion, and, second, a power of attorney to him, signed by Peter E. G. Plasworth, F. C. K., to which was an affidavit signed Peter E. G. Plasworth, F. C. K., to the fact of the indebtedness of the insolvents to Plasworth.

On the trial of the opposition, Henry Mansion and Plasworth were placed upon the stand by opponent. Henry Mansion testified that he was the person who had signed the power of attorney to Kocke, and made the affidavit annexed thereto; that Charles Mansion was his brother; that he was one of his heirs; that his succession had never been opened, but the heirs had simply taken possession as such; that the insolvents were indebted to his brother, Charles Mansion, as stated in the affidavit; that he, the witness, had charge of all the business before and at the time of his death, and still continued the management with the consent of all the heirs; that he knew, personally, of the existence of and of the amount of the debt sworn to; that his co-heirs had not authorized him to sign for them the power of attorney before he had done so, but that after having signed the same he informed them of what he had done, and they said it was all right.

Plasworth testified to the fact of the existence of and the amount of the indebtedness of the insolvents to himself, as stated in the list of the creditors, but he declared that he had sold his claim to F. C. Kocke; that the written power of attorney to Henry Kocke to vote upon that claim in his name was presented to him for signature, but

he said he had no interest in it; that he had sold the same; that his vendee could sign it, if he wanted to, that it was not his signature, but P. E. G. Plasworth, per F. C. K.

It was admitted on the trial that "at the time it came to the question of voting on the $1,500 for which Mr. Plasworth was put on the *bilan,*. that F. C. Kocke notified the notary that he had purchased that claim, and that he owned it, and that under instructions from the notary a power of attorney was executed, as offered in evidence, simply for the reason that Mr. Plasworth's name was on the *bilan,* and that it was done in that way to make connection with the *bilan.*"

The district judge, in his reasons for judgment, said that his judgment was that both claims were legally voted, and that as there was no fraud, or concealment, the votes must stand; that he did not think that on the mere technicalities urged, the proceedings should be avoided.

That the Plasworth claim was voted by its owner. That the fact that he chose to appear as the agent of his vendor, and in his name, the said vendor being consulted and agreeing thereto, did not invalidate the act or the vote.

That, in the Mansion case, all the heirs being of full age after full information acquiesced in the act and vote of the co-heir, who was the manager of the affairs of the deceased and their own business manager.

That he understood the jurisprudence to be that, mere irregularities, in the absence of fraud, and where all the notices had been given, and all the delays had been observed, and a proper order of court had been based thereon, would not suffice to avoid the proceedings and set aside the election.

That honest claims due by the insolvents were honestly cast and counted, and he did not think, for mere irregularity, where no one was injured or illegally deprived of any right, he should subject the estate and its creditors to the expense and delay of another meeting.

That what had been beneficially done with substantial compliance with the direction of the law, should stand.

### Opinion.

I. Through the evidence adduced on the trial of appellants' opposition it was established that the debts placed by the insolvents upon

their *bilan*, as due to Charles Mansion and to Plasworth, were really owed by them, though the former claim belonged, at the time, to the heirs of Mansion, he being then dead; it was further established that the vote cast upon those claims was cast in conformity to the wishes of those parties owning the same at the time of the meeting.

Finding, as we do, that as a matter of fact the cession of the insolvents was accepted, their discharge consented to, and the selection of Henry Kocke made by the majority of the actual creditors in number and amount, we would not be justified in setting aside the results reached at the meeting of creditors, simply because the evidence submitted to the notary as to the existence of the Mansion and Plasworth claims, and the authority of Henry Kocke to vote upon the same was such as might have justified him in refusing to receive such votes.

The controlling factor in reaching a decision in this case is under the conditions and circumstances in which the issues were raised and presented, the verity of the declarations made by the notary, not the sufficiency or insufficiency of the evidence upon which he acted.

It would be a vain and useless act to send the parties back to reach the same result which has already been reached, merely to have the evidence (which the record shows could have been produced before) placed properly before the notary. In Conant vs. Millaudon, 5 Ann., 542, the plaintiff sought to have an election of directors of a bank set aside because the commissioners of election received votes without proper evidence, but this court refused to grant this prayer, it having been subsequently shown that the votes so received were legal votes.

It said: "It is claimed that the vote should have been rejected by the commissioners, because they had not before them legal evidence (of the right of the voter to vote) and that the legality of the vote must repose solely upon the evidence offered before the judges of election.

We are not prepared to say that, for the purposes of an election, the evidence was insufficient; but, however, that may be, it is now fully established that the vote was one which the voter was legally entitled to give. It would be against reason to set aside an election effected by legal votes, because full proof of their being legal was not laid before the commissioners, and we are aware of no precedent for such a course.

The plaintiffs cite the case of the Mohawk and Hudson Railroad Company, 19 Wendell, 135, but there the question was whether the

election should be set aside because, as alleged, a vote had been improperly rejected. In determining whether the rejection was legal, the court intimates that it could not look beyond the evidence presented to the commissioners. The want of analogy between the two cases is obvious. If a party neglects to present proper evidence to the commissioners, and his vote is rejected, it is his own *laches,* and he has no equity in asking the court to relieve him from its consequences. But when the commissioners, on insufficient evidence, have received a legal vote, why overthrow an election when the same vote would, on proper evidence, be received again?"

Asking ourselves the same question, we must answer it in the same manner as did our predecessors.

The case does not come before us on objections made by appellants before the notary, to the acceptance of the votes on the evidence adduced and the overruling of the same by the officer, but upon objections urged for the first time through an opposition filed after the *proces verbal* of the proceedings of the meeting of creditors had been returned to the court by the notary.

The time at which objections are urged frequently control not only the decision of issues, but determine the character of the issues themselves. See, on this subject, 9 La., 395; 13 Ann., 189.

We think the principles announced in Conant vs. Millaudon find proper application here.

For the reasons assigned, it is hereby ordered, adjudged and decreed, that the judgment appealed from be and the same is hereby affirmed.